United States District Court
Southern District of Texas
**ENTERED**
September 08, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILFRED BRASSEUR, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-03570 |
| § | |
| LIFE INSURANCE COMPANY OF § | |
| NORTH AMERICA, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Pending before the Court is the plaintiff's, Wilfred Brasseur (the "plaintiff"), motion for partial summary judgment and brief in support (Dkt. No. 6). The defendant, Life Insurance Company of North America (the "defendant"), has filed a response and cross-motion for partial summary judgment in opposition to the motion (Dkt. No. 9) to which the plaintiff has filed a reply (Dkt. No. 16). After having carefully considered the motion, response, reply, the record, and the applicable law, the Court determines that the plaintiff's motion for partial summary judgment should be **GRANTED** and the defendant's cross-motion for partial summary judgment should be **DENIED**.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

This is a suit brought to recover disability benefits allegedly due under a long term disability plan (the "Plan"). The plaintiff is a former employee of Chicago Bridge & Iron Company ("CB&I"), which is the policyholder of the Plan. The defendant is the insurer of the Plan as well as the plan administrator.

The Plan was issued to the plaintiff out of Chicago, Illinois in 2004 and exists under Illinois law. While employed with CB&I, the plaintiff worked as a computer engineer in CB&I's Houston location. The plaintiff's last day with CB&I was November 15, 2013. On April 23, 2014, the plaintiff filed a claim with the defendant for long term disability insurance benefits. On May 22, 2014, the defendant denied the plaintiff's claim because "[its] evaluation of the symptoms [the plaintiff] describe . . . [were] not supported by disability and [did] not support an inability to perform. . . ." In other words, the defendant's denial was based on its determination that the plaintiff was not "disabled" as defined by the Plan's terms.

On December 9, 2015, the plaintiff filed suit under the Employee Retirement Income Security Act ("ERISA") pursuant to 29 U.S.C. § 1132(a)(1)(B). The plaintiff asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### III.   CONTENTIONS OF THE PARTIES

#### A.   The Plaintiff's Contentions

The plaintiff cites the saving clause of ERISA, 29 U.S.C. § 1144(b)(2)(A), to urge the Court to adopt the State of Illinois' *de novo* standard of review of ERISA benefit determinations. *See* 50 Ill. Adm. Code § 3002.3; 29 Ill. Reg. 10172. In addition, the plaintiff argues that the defendant is collaterally estopped from opposing the plaintiff's exemption from ERISA preemption because the defendant has conceded to the *de novo* standard in previous unrelated litigation. Therefore, the plaintiff moves the Court for partial summary judgment in his favor adopting a *de novo* standard of review in this case.

### B.     The Defendant's Contentions

The defendant maintains that the Illinois state law is preempted by federal ERISA law and does not affect the applicable standard of review in ERISA cases. Consequently, the defendant argues that an ERISA plan administrator's factual determinations are examined under the abuse of discretion standard of review. The defendant further argues that an abuse of discretion standard of review is mandated by the fact that the Plan expressly confers discretionary authority on the defendant to interpret the Plan's terms. As a result, the defendant urges the Court to deny the plaintiff's motion and grant partial summary judgement in its favor adopting an abuse of discretion standard of review in this case.

### IV.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift*

*Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## V. ANALYSIS & DISCUSSION

### A. Standard of Review Under ERISA

For purposes of the parties' cross-motions, the Court is charged with addressing the sole inquiry of whether the applicable Illinois state statute in section 2001.3 is exempt from statutory ERISA preemption by virtue of ERISA's saving clause. The answer sets the standard of review for this case. According to the Plan's Appointment of Claim Fiduciary form ("ACF form"), the defendant, in its capacity as the plan administrator, is granted discretionary authority to interpret the Plan and make binding claim determinations. On the other hand, section 2001.3 expressly prohibits discretionary clauses in insurance plans, such as the Plan at issue. This is important, among other

reasons, because judicial review of administrative decisions under ERISA are generally governed by the abuse of discretion standard when a plan contains a discretionary clause. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 954, 103 L. Ed. 2d 80 (1989).  If there is no discretionary clause in a plan, however, the *de novo* standard of review is applied.  *Id.*

### *ERISA Preemption Framework*

The ERISA preemption provisions are designed to ensure that employee benefit plan regulation be "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 504, 101 S. Ct. 1895, 1896, 68 L. Ed. 2d 402 (1981).  ERISA's preemptive structures derive primarily from three statutory provisions: (1) the "preemption clause," (2) the "saving clause," and (3) the "deemer clause."  *See* ERISA § 514(a), 29 U.S.C. § 1144(a).

The preemption clause of § 514(a) provides that ERISA will "supersede any and all State laws" to the extent that those laws "relate to" any employee benefit plan that is subject to ERISA.  29 U.S.C. § 1144(a).  Section 514(b)(2)(A)'s saving clause operates to "save" or exempt from the preemption clause certain state laws that "regulate[] insurance, banking, or securities."  *See* 29 U.S.C. § 1144(b)(2)(A).  In such case, even laws that clearly "relate to" employee benefit plans are exempt from ERISA's preemption provision under the saving clause.  Finally, under § 514(b)(2)(B), the deemer clause ensures that ERISA plans are not "deemed" to be engaged in the insurance or banking business for purposes of determining whether the saving clause should apply to exempt a state law from preemption.  *See* 29 U.S.C. § 1144(b)(2)(B).  However, the Supreme Court

has held that an otherwise "saved" law may nonetheless be subject to preemption if it conflicts directly with the congressional policies behind ERISA by supplementing or supplanting ERISA's remedial enforcement provisions. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 216–17, 124 S. Ct. 2488, 2500, 159 L. Ed. 2d 312 (2004).

### *The Illinois Statute*

The plaintiff relies on the Illinois law entitled "Discretionary Clauses Prohibited" which provides the following:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Adm. Code § 2001.3

The parties do not dispute that section 2001.3 "relate to" an employee benefit plan bringing the Plan within ERISA's general preemption clause. Like courts have recognized, section 2001.3 bears indirectly but substantially on all insured benefit plans bringing it within the "relate to" meaning of ERISA § 1144(a). *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S. Ct. 2380, 2389, 85 L. Ed. 2d 728 (1985) ("The phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'") (alteration in original).

The plaintiff avers, however, that section 2001.3 is saved from ERISA preemption under the saving clause. The Court agrees. To be "saved" from preemption under

ERISA, a state law (1) "must be specifically directed toward entities engaged in insurance" and (2) "must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42, 123 S. Ct. 1471, 1479, 155 L. Ed. 2d 468 (2003). "[N]ot all state laws 'specifically directed toward' the insurance industry will be covered by § 1144(b)(2)(A), . . . insurers must be regulated 'with respect to their insurance practices,'" *Id.* at 366.

"In deciding whether a law 'regulates insurance' under ERISA's saving clause, [courts] start with a 'common-sense view of the matter,' under which "a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366, 122 S. Ct. 2151, 2159, 153 L. Ed. 2d 375 (2002) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S. Ct. 1549, 95 L. Ed. 2d 39) (internal citation omitted)). "[Courts] then test[] the results of the commonsense enquiry by employing the three factors used to point to insurance laws spared from federal preemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq." *Id.*

Because the McCarran–Ferguson factors are considered as "guideposts," the state law at issue need not satisfy each factor to be saved from preemption. *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 374, 119 S. Ct. 1380, 1389, 143 L. Ed. 2d 462 (1999). The three factors are: (1) whether the practice has the effect of transferring or spreading the policyholder's risk; (2) whether it is an integral part of the policy relationship between the insured and the insurer; and (3) whether the practice is limited to entities in the

insurance industry. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S. Ct. 3002, 73 L. Ed. 2d 647 (1982).

Section 2001.3 is specifically directed toward the insurance industry, and this is an insurance regulation under the common sense view. A review of the McCarran–Ferguson factors confirms this conclusion. First, section 2001.3 has the effect of transferring or spreading the policyholder's risk because it expressly limits the discretionary power of the policyholder to interpret the terms and/or make determinations. This prohibition could essentially expose the policyholder to risk that it would otherwise not be associated. Second, section 2001.3's discretionary prohibition is indeed an integral part of the policy relationship between the insured and the insurer because it requires an independent review when there is a disagreement concerning the terms of the policy. Lastly, section 2001.3 is limited to entities in the insurance industry. Thus, section 2001.3 regulates insurance as defined under ERISA's saving clause.

Next, section 2001.3 certainly qualifies as having a substantial effect on the risk pooling arrangement between the insurer and the insured. Section 2001.3's discretionary prohibition dictates the conditions under which an insurance company must pay for the risk it has assumed. Section 2001.3 essentially address the substantive terms of insurance contracts. It is directed at entities engaged in insurance, it alters the scope of permissible bargains between insurers and insureds, and eliminates the defendant's autonomy to guarantee terms congenial to its own interest. As a result, section 2001.3 satisfies the *Miller* test, and is, therefore, saved from preemption under ERISA's saving clause.

The Court also finds that section 2001.3 does not run afoul of Congress' polices intended by ERISA legislation. *Davila*, 542 U.S. at 216–17, 124 S. Ct. 2500. Section 2001.3 operates well short of supplementing or supplanting ERISA's remedial enforcement provisions. Section 2001.3 simply alters the standard of review, which is permissible under ERISA.

The defendant counters that section 2001.3 is "pulled back" into ERISA's preemptive scope under the deemer clause. This argument is unavailing as it is foreclosed by the Court's finding regarding the saving clause. The Supreme Court has expressed the same logic in noting the following:

> This common-sense view of the matter, moreover, is reinforced by the language of the subsequent subsection of ERISA, the "deemer clause," which states that an employee-benefit plan shall not be deemed to be an insurance company "for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B). By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance saving clause, it would have been unnecessary for the deemer clause explicitly to exempt such laws from the saving clause when they are applied directly to benefit plans.

*Metro. Life Ins. Co.*, 471 U.S. at 740–41, 105 S. Ct. 2389–90. Accordingly, the Court finds that partial summary judgment for the plaintiff is appropriate.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the plaintiff's motion for partial summary judgment is **GRANTED**. Further, the defendant's cross-motion for partial summary judgment is **DENIED**.

SIGNED on this 8th day of September, 2016.

_____
Kenneth M. Hoyt
United States District Judge